*An appropriate order will be issued.*

UNITED TELECOMMUNICATIONS, INC. (FORMERLY UNITED UTILITIES INCORPORATED), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7866–72.   Filed January 31, 1977.

*William H. Curtis, George F. Crawford;* and *Allan W. Stopperan,* for the petitioner.

*Joe K. Gordon,* for the respondent.

SUPPLEMENTAL OPINION

FORRESTER, *Judge:* On November 10, 1975, we filed our Findings of Fact and Opinion in the instant case (65 T.C. 278), which held that petitioner[1] was entitled to include in the basis of self-constructed telephone and powerplant properties that qualify as new section 38 property the capitalized depreciation of property used in its construction on which no investment credit had been allowed.

The problem with which we were faced in our prior opinion is outlined in detail therein. The following brief recapitulation

---

[1] As in our prior opinion, we will continue to refer only to petitioner though it was actually petitioner's subsidiaries that constructed the new sec. 38 property.

is necessary, however, in order to understand more easily the issue now before us: The Supreme Court has held that depreciation on capital assets used in the construction of other capital assets must be treated for tax purposes as a cost of acquiring the constructed asset and, therefore, such depreciation must be capitalized as part of the basis of the constructed asset rather than taken as a current deduction. *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974). Section 48(a)(1) defines "section 38 property," inter alia, as property "with respect to which depreciation * * * is allowable." A logical interplay of *Idaho Power* and section 48(a)(1) would mean that once a capital asset was used in the construction of another capital asset,[2] a depreciation deduction with respect to the construction-related asset would no longer be allowable (because it must instead be capitalized), and the construction-related asset would at that point cease to qualify as section 38 property. Once the asset no longer qualifies as section 38 property, section 47[3] would become applicable, and a part or all of the investment credit taken on the construction-related asset would be recaptured.

Respondent's regulations, however, do not permit the tax consequences to proceed in this fashion. Section 1.48–1(b)(4), Income Tax Regs., in defining "depreciation allowable," provides that where depreciation on a construction-related asset is not allowed as a deduction but must be capitalized as part of the basis of the constructed asset, a deduction for depreciation shall be *treated* as allowable for the taxable year with respect to the property on which the depreciation is sustained. Thus, because respondent treats the deduction as

---

[2] Hereinafter, these assets will be referred to, respectively, as the "construction-related asset" and the "constructed asset."

[3] SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY.

(a) GENERAL RULE.—Under regulations prescribed by the Secretary or his delegate—

(1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

allowable for the taxable year, the asset continues to qualify as a section 38 asset for that year and no recapture is effected. Respondent's generosity is tempered, however, by section 1.46–3(c)(1), Income Tax Regs., which provides, in part, as follows:

However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to any other property used in the construction, reconstruction, or erection of such new section 38 property. * * *

In our prior opinion, we recognized that the regulatory scheme of sections 1.46–3(c)(1) and 1.48–1(b)(4) was at odds with the normal interaction of *Idaho Power* and the investment credit statutory provisions; nevertheless, we held that such an approach was reasonable and consistent with the statutes' purpose in that it served to prevent manipulations by taxpayers whereby they could receive, in essence, a double investment credit. 65 T.C. at 286.

However, we held the above-quoted portion of section 1.46–3(c)(1), Income Tax Regs., to be invalid to the extent that, in determining the qualified investment in new section 38 constructed property, it excluded from that property's basis the capitalized depreciation on construction-related assets on which *no* investment credit had been previously allowed. Because no investment credit had been allowed with respect to these assets, we found the regulatory abuse-prevention scheme to be inapplicable. 65 T.C. at 287.

The issue now before us arises out of petitioner's objection to respondent's deficiency computation submitted to this Court under Rule 155, Tax Court Rules of Practice and Procedure.

In order to understand the present controversy, it is first necessary to examine the manner in which the actual amount of the allowable investment credit is computed. For the taxable years before us (1964 and 1965), section 46(a) allowed an investment credit equal to 7 percent of a taxpayer's "qualified investment" in section 38 property. For these same years, section 46(c) defined "qualified investment" in new section 38 property as follows:

(c) QUALIFIED INVESTMENT.—

(1) IN GENERAL.—For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year * * *

(A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year, * * *

* * *

(2) APPLICABLE PERCENTAGE.—For purposes of paragraph (1), the applicable percentage for any property shall be determined under the following table:

| If the useful life is— | The applicable percentage is— |
| --- | --- |
| 4 years or more but less than 6 years | 33⅓ |
| 6 years or more but less than 8 years | 66⅔ |
| 8 years or more | 100 |

In making his Rule 155 computation, respondent proceeded as follows: In computing petitioner's "qualified investment" in new section 38 constructed property, he allowed all of the depreciation on construction-related property, with respect to which no investment credit had been allowed, to be capitalized as part of the constructed property's basis. However, if an investment credit had been allowed with respect to any construction-related property, respondent did not allow any depreciation with respect to such property to be so capitalized.

Petitioner's sole objection to respondent's Rule 155 computation is directed toward those particular construction-related assets with useful lives of at least 4, but less than 8 years. It contends that, because its allowable "qualified investment" in such assets is less than 100 percent of basis, it should be allowed to capitalize the depreciation in proportion to that part of the basis not permitted to be taken into account in computing "qualified investment." For example, if a truck used in the construction of a new section 38 asset has a useful life of only 5 years, its "qualified investment" in the truck would be only one-third of its basis. Accordingly, petitioner argues that two-thirds of the truck's depreciation should be permitted to be capitalized as part of the basis of the constructed asset. We do not agree.

In our prior opinion, we carefully considered and, for the most part, found valid the regulatory scheme of sections 1.46–3(c)(1) and 1.48–1(b)(4). In essence, the interplay of these two sections of the regulations effects a trade-off whereby respondent, by treating the depreciation sustained on the construc-

tion-related asset as "allowable," forgoes recapture of the investment credit taken on such asset but, in return, disallows the capitalization of the depreciation sustained with respect to the asset. Where *no* investment credit had been previously allowed with respect to the construction-related asset, however, that portion of the regulations which we found invalid would have still disallowed the capitalization of the depreciation. In such a situation there would be, in reality, no trade-off: respondent's disallowance of the capitalized depreciation would not be balanced by the reciprocal forbearance of recapture since, in such a case, there would be no investment credit to be recaptured. However, where an investment credit had been previously taken with respect to an asset, albeit an asset with a useful life of at least 4 but less than 8 years, then there is substance to respondent's trade-off and, in such a case, we think his regulatory scheme should be permitted to function as designed.

We fully realize that this balance may at times be imperfect and may not result in perfect equity in all cases.[4] Nevertheless, this is the regulatory path respondent has chosen to follow and one which we have found to be reasonable and consistent with the statute from an abuse-prevention standpoint. To reach the result proffered by petitioner would necessitate our engaging in a detailed rewriting of respondent's regulations. This we would not do in our prior opinion, and we will not do so here.

> *Decision will be entered in accord with respondent's computation.*

---

[4] Any economic disparities will by no means always work to respondent's benefit. We can imagine any number of factual situations in which the amount of the investment credit that otherwise would be recaptured would exceed the potential benefit resulting from increasing the taxpayer's qualified investment in the constructed asset by the amount of the capitalized depreciation.

