**TRANSCO EXPLORATION COMPANY,**
Petitioner–Appellee,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellant.**

No. 91–4114.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1992.

Steven W. Parks, Gary R. Allen, Chief, Richard Farber, Shirley D. Peterson, Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div., Abraham N.M. Shashy, Jr. Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.

Emily Ann Parker, Dennis J. Grindinger, Thompson & Knight, Dallas, Tex., for petitioner-appellee.

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, and McBRYDE,[1] District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This vestigial case involves the net income limitation on windfall profit under

---

1. District Judge of the Northern District of Tex-    as, sitting by designation.

§ 4988 of the Internal Revenue Code, 26 U.S.C. § 4988,[2] since repealed. The Commissioner appeals the Tax Court's decision that a taxpayer computing this limitation is entitled both to exclude lease bonus payments in calculating taxable income from the property and to include these same payments in its basis for the cost depletion deduction from taxable income. We affirm.

## I

Appellee Transco Exploration Co. is an oil and gas exploration and production company that leased properties on the outer continental shelf from the United States government for offshore drilling. For the granting of the leases on these properties, Transco paid lease bonuses to the United States in addition to royalties based on the amount of oil extracted. The tax treatment of these lease bonuses lies at the heart of the dispute in this case.

Section 4986 of the Internal Revenue Code imposes an excise tax on the windfall profit reaped from each barrel of oil produced. Section 4988(b), however, places a ceiling on the amount of profit that is subject to this tax by limiting windfall profit per barrel to 90% of the net income attributable to such barrel. Net income attributable to a barrel is determined by dividing the taxable income from the property for the taxable year by the number of barrels of taxable crude oil from such property for that year. "Taxable income from the property" is in turn determined under § 613(a), with the exception of the so-called 'as-if' cost depletion deduction, which consists of the cost depletion which the taxpayer would have been allowed had he used cost depletion for all taxable years and if all intangible drilling and development costs and qualified tertiary injectant expenses had been capitalized. § 4988(b)(3)(C). Treasury regulations provide that lease bonuses constitute capital outlays which are includable in the taxpayer's basis for the

purpose of computing the cost depletion deduction. 26 C.F.R. § 1.612–3(a)(3).

We refer to § 613(a)—the percentage depletion provision of the Code—for the primary definition of "taxable income from the property." Section 613(a) provides for a depletion allowance calculated as a specified percentage of "gross income from the property" not to exceed 50% of "taxable income from the property." The regulations under § 613(a) define "taxable income from the property" as " 'gross income from the property' as defined in section 613(c) and §§ 1.613–3 and 1.613–4, less all allowable deductions...." 26 C.F.R. § 1.613–5. In the case of oil and gas wells, "gross income from the property" is defined as "the amount for which the taxpayer sells the oil in the immediate vicinity of the well." 26 C.F.R. § 1.613–3. If the oil or gas is converted to a refined product before sale, or transported from the premises before sale, gross income is the equivalent of the market or field price of the oil or gas before conversion or transportation. *Id.*

Section 613(a) does not refer explicitly to lease bonuses. However, the regulations state that "[i]f bonus payments have been paid in respect of the property ... there shall be excluded in determining the 'gross income from the property' an amount equal to that part of such payments which is allocable to the product sold (or otherwise giving rise to income) for the taxable year." 26 C.F.R. § 1.613–2(c)(5)(ii).

In calculating the net income limitation on its windfall profit under § 4988(b)(3)(A) for taxable year 1980, Transco excluded lease bonus payments totalling $10,123,428 from gross income in determining taxable income from the property. Pursuant to § 4988(b)(3)(C), Transco also reduced taxable income by the cost depletion which would have been allowable for the taxable year with respect to the property had it been used. In its calculation of cost depletion, Transco included in its cost basis the same lease bonus payments totalling $10,-123,428. In 1987, the Commissioner sent

---

**2.** All statutory references in this opinion are to sections of the Internal Revenue Code, which is codified at title 26 of the U.S.Code.

Transco a statutory notice of deficiency, reasoning that taking the lease bonus payments into account in both calculations had resulted in an improper double tax benefit. Transco petitioned for a redetermination in the Tax Court.

The Tax Court held that Transco was entitled both to exclude the lease bonus payments from gross income in calculating taxable income from the property under § 4988(b)(3)(A) and to include the lease bonus payments in its cost basis for the cost depletion deduction under § 4988(b)(3)(C). Its reasoning was that the plain wording of the applicable Code provisions and regulations permitted the treatment of the lease bonuses that Transco had adopted. It recognized that the Secretary of the Treasury is authorized to amend the regulations to prevent any double tax benefit accorded to lease bonuses, but that he had not chosen to do so. The Tax Court refused to do judicially what the Secretary had failed to do by regulation and granted Transco's petition. The Commissioner appeals.

## II

■ The Commissioner argues that § 4988(b) and applicable regulations refer to § 613(a) only to incorporate the *deductions* allowable in calculating *taxable income* from the property, not the *exclusions* allowable in calculating *gross income* from the property. We do not find the Commissioner's construction of § 4988(b) and its regulations persuasive.

Section 4988(b)(3)(A) states simply that "[e]xcept as otherwise provided in this paragraph, the taxable income from the property shall be determined under section 613(a)." Thus the provision itself does not refer directly to "gross income" or to exclusions from gross income. Nevertheless, as the Tax Court appropriately recognized, the computation of taxable income from the property must start with gross income, else the concept of taxable income is meaningless. Indeed, the regulations under § 613(a) define taxable income as "gross income from the property ... less all allowable deductions." 26 C.F.R. § 1.613-5. The regulations also state that an allocable

portion of the lease bonuses is to be excluded in determining gross income from the property. 26 C.F.R. § 1.613-2. Thus if determination of taxable income must start with gross income as defined in the regulations under § 613(a), then it would seem apparent that exclusion of an allocable portion of the lease bonuses is required in determining taxable income from the property under § 4988(b)(3)(A).

The Commissioner contends, however, that the regulations under § 4988(b) are contrary. 26 C.F.R. § 51.4988-2(b)(1)(ii) states that the taxpayer should "determine [his] taxable income from the property ... by reducing [his] gross income from the property *determined under paragraph (b)(1)(i) of this section* by all allowable deductions attributable to the production of taxable crude oil that would be subtracted in determining income from the property under section 613(a)...." Paragraph (b)(1)(i) states simply that the taxpayer should "determine [his] gross income from the property (from which the barrel was produced) that is attributable to taxable crude oil for the taxable year." Because this paragraph does not explicitly refer to § 613(a) for calculation of "gross income," whereas paragraph (b)(1)(ii) does refer to § 613(a) for calculation of "taxable income," the Commissioner argues that the regulations do not contemplate reference to § 613(a) for exclusions from gross income such as the lease bonus exclusion.

If paragraph (b)(1)(i) of this regulation provided a means of calculating gross income from the property, or some sort of definition of gross income from the property, the Commissioner's argument would have some persuasive force. However, the only definition of gross income or means of calculating gross income that exists with respect to oil and gas properties is found in the regulations under § 613(a). 26 C.F.R. § 1.613-3. Indeed, the Commissioner concedes that the "gross income from the property" referred to in paragraph (b)(1)(i) is that provided for under § 613. The assertion that § 4988(b) can incorporate the general definition of gross income in § 613(a) and its regulations but not the

exclusions from gross income is essential to the government's effort to persuade courts to do the Commissioner's work, but it is fanciful. Nothing in the statute supports this interpretation. In fact, the Commissioner has already ruled that taxable income under § 613(a) incorporates the exclusions from gross income along with the general definition. Rev.Rul. 79-73, 1979-1 C.B. 218; Rev.Rul. 81-266, 1981-2 C.B. 139. It would be irrational to rule differently for taxable income under § 4988(b) when it explicitly refers to § 613(a) for the determination of taxable income.

The Commissioner's argument that the statutory scheme permits his reading travels against his own earlier reading. In a private letter ruling issued to a taxpayer in 1982, the Commissioner endorsed the same construction of § 4988(b) that Transco urges here. Priv.Ltr.Rul. 84-12-004 (June 22, 1982). The Commissioner explicitly stated that a taxpayer calculating the net income limitation on windfall profit was "permitted to reduce the 'taxable income from the property' by an allocable part of the lease bonus paid for the property and to include in leasehold cost in the first taxable period, 100 percent of the lease bonus paid for the property, in computing the 'as-if' cost depletion deduction." In 1985, the Commissioner reversed his position and asserted that a taxpayer computing the net income limitation is not permitted to exclude an allocable portion of the lease bonuses paid with respect to the property. Priv.Ltr.Rul. 85-43-005 (July 19, 1985). The Code provisions and regulations, however, had not been changed in the interim. Such private letter rulings "may not be used or cited as precedent," § 6110(j)(3), and we do not do so. It does not follow that they are not relevant here. *See also Amato v. Western Union Int'l*, 773 F.2d 1402, 1412-13 (2d Cir.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

The Supreme Court confronted a similar situation in *Hanover Bank v. Commissioner*, 369 U.S. 672, 686-87, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1962). In that case, the Commissioner reversed a position he had taken in a number of previous private rulings, to the detriment of the taxpayers. The Court found that although the taxpayers were not entitled to rely on letter rulings not specifically issued to them, the prior rulings were significant since they disclosed the interpretation of the statute by the agency charged with administering the revenue laws. They provided further evidence that the Court's construction of the tax provision at issue was compelled by the language of the statute. We think the Commissioner's previous interpretation of § 4988(b) is a significant indication that Transco's treatment of the lease bonuses was proper. Although the Commissioner is entitled to change his mind, he ought to do more than stride to the dais and simply argue in the opposite direction.

In sum, we think the plain meaning of § 4988(b) is that taxable income from the property is to be calculated just as it would be under § 613(a). This includes starting with gross income as defined in that section and its regulations. Transco was therefore allowed to exclude an allocable portion of the lease bonuses from gross income in its derivation of taxable income from the property for the purpose of the net income limitation on windfall profit under § 4988(b).

## III

The Supreme Court has explained that "the Code should not be interpreted to allow respondent 'the practical equivalent of double deduction' absent a clear declaration of intent by Congress." *United States v. Skelly Oil Co.*, 394 U.S. 678, 684, 89 S.Ct. 1379, 1383, 22 L.Ed.2d 642 (1969). Likewise in *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68, 54 S.Ct. 596, 598, 78 L.Ed. 1127 (1934), the Court refused to allow "the practical equivalent of double deduction." It reasoned that "[i]n the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of the taxpayer will not be attributed to lawmakers." *Id.*

*Skelly* and *Charles Ilfeld* offer an important canon of statutory construction: whenever possible, tax provisions should be

interpreted so as to avoid the practical equivalent of double deductions. Stated another way, Congress must make a clear statement that a double benefit is intended before we will construe a provision to allow this result. Nevertheless, this is only an interpretive principle. It does not require or license us to rewrite the Code or the Secretary's regulations. This court and others have balked in the past at revision of the tax code to reach what appears to be a more sensible result. *See, e.g., Abdalla v. Commissioner*, 647 F.2d 487, 503 (5th Cir.1981); *International Trading Co. v. Commissioner*, 484 F.2d 707, 711 (7th Cir. 1973); *Woods Investment Co. v. Commissioner*, 85 T.C. 274 (1985). Courts are particularly ill-equipped to overhaul complicated tax provisions whose function in the general tax scheme is often beyond their ken.

Indeed, the Supreme Court stated in *Hanover* that "we are not at liberty, notwithstanding the apparent tax-saving windfall bestowed upon taxpayers, to add to or alter the words employed to effect a purpose which does not appear on the face of the statute." 369 U.S. at 687, 82 S.Ct. at 1089. Similarly, the Court has explained that "where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall." *Lewyt Corp. v. Commissioner of Internal Revenue*, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955). Therefore, although we should try to avoid double tax benefits, courts must leave them standing if the Code positively requires this outcome.

The principle that double deductions are disfavored has less force where, as here, the tax provision in question does not attempt to measure actual income. The net income limitation on windfall profit sets a ceiling on an excise tax that the government has imposed on certain oil profits. Both the windfall profit tax base and the ceiling limitation on that tax base are somewhat arbitrary amounts defined by com-

plex statutory computations. In these circumstances, double counting takes the form of double use of a number in formulae constructed to achieve a stated policy. So viewed, it is not necessarily inimical to Congress' design.

We have concluded that § 4988(b) inescapably refers to § 613(a) for the calculation of taxable income from the property, including its starting point of gross income from the property. The regulations under § 4988(b) and § 613(a) require exclusion of lease bonuses from gross income and inclusion of lease bonuses in the cost basis for the 'as-if' cost depletion deduction. Although the formula twice draws on lease bonuses, we are unwilling to amend the regulations judicially to avoid this result. In any event, if " 'these taxpayers have found a hole in the dike, we believe it one that calls for the application of the Congressional thumb, not the court's.' " 369 U.S. at 688 n. 23, 82 S.Ct. at 1089 n. 23 (quoting *Fabreeka Products Co. v. Commissioner*, 294 F.2d 876, 879 (1st Cir. 1961)).

AFFIRMED.